**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| Tim Health, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| YOLO Group, LTD. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| Tim-Health.com, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Whoistimheath.com, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| John Does 1-10 | ) | |
| | ) | |
| Defendants. | ) | |

<u>Verified Complaint</u>

Comes Now the Plaintiff, Tim Heath ("Heath" or "Plaintiff") and YOLO Group, Ltd., by counsel, and files this complaint against Defendants Tim-Heath.com, whoistimheath.com (the "Defendant Domain Names") and John Does 1–10 (collectively, "Defendants").

I. <u>NATURE OF THE SUIT</u>

1. This is an action for: (i) declaratory judgment concerning rights in and to the Defendant Domain Names; (ii) violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d); (iii) defamation and defamation per se; (iv) business disparagement / injurious falsehood; (v) tortious interference with contractual relations

1

and business expectancy; (vi) unfair competition and false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (vii) related state-law claims.

2. Defendants have registered and are using domain names incorporating Plaintiff's personal name and identity to publish false and defamatory statements accusing Plaintiff and his company of serious misconduct, including "black market dealings," "crypto-based laundering schemes," and to falsely claim that Plaintiff "fled" to the United Arab Emirates ("UAE") to evade legal liability.

3. Defendants' conduct is part of a pressure campaign in which a former business partner demanded large payments from Plaintiff's company and threatened to "go global" with a coordinated "scandal" campaign if those monetary demands were not met. Defendants have followed through on those threats by publishing and amplifying the defamatory content on the Defendant Domain Names and via social-media channels.

4. Plaintiff seeks injunctive and other equitable relief to stop Defendants' ongoing unlawful conduct, to secure control of the Defendant Domain Names, and to prevent further irreparable harm to his reputation and business relationships.

II. JURISDICTION AND VENUE

5. This Court has original subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the ACPA and the Lanham Act, 15 U.S.C. §§ 1114 and 1125 and Virginia claims all arising out of the same set of operative facts.

7. The Court has original *in rem* jurisdiction over the Defendant Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A), because the registries for the .com domain names Tim-Heath.com and whoistimheath.com are operated by Verisign, Inc., which is located

within this District, and because Plaintiff is unable, despite due diligence, to obtain personal jurisdiction over a persons who would otherwise be defendants in a civil action.

8.  This Court has supplemental jurisdiction over the remaining claims in this matter pursuant to 28 U.S.C. § 1367 as they arise from the same set of operative facts and form a part of the same case and controversy as the claims for which this Court has original jurisdiction.

9.  The Declaratory Judgment Action, 28 U.S.C. § 2201 provides for the declaration of the Plaintiff's rights in this matter.

9.  Venue is proper in this District under 15 U.S.C. § 1125(d)(2)(C) because the registries for the Defendant Domain Names are located in this District and therefore the Defendant Domain Names have their *situs* in this judicial district.  Further, venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claims—namely, the registration and maintenance of the Defendant Domain Names on which the false, damaging and defamatory statements are being published—occurred here.

III. THE PARTIES

10.  Plaintiff Tim Heath is a natural person, citizen of Australia, and the founder of YOLO Group, Ltd. ("YOLO"), an international i-gaming and financial-technology group of companies incorporated in Guernsey, United Kingdon.  Mr. Heath has developed substantial goodwill in his personal name and reputation in connection with those activities over many years and generates significant income from same.

11.  Defendant Domain Names Tim-Heath.com and whoistimhealth.com are both the *res* of this *in rem* action, are internet domain names with a registry, Verisign, whose primary place of business is 12061 Bluemont Way, Reston, Virginia 20190, is within this Court's judicial district.

13.  Defendant John Doe 1, believed to be the individual using the alias "Porsuk" and operating certain social-media accounts that promote and link to the Defendant Domain Names, is a natural person whose exact identity and residence are presently unknown despite reasonable investigation.

14.  Defendants John Does 2–10 are other unknown individuals and/or entities who participated in registering, financing, designing, hosting, or publishing content on the Defendant Domain Names, or who conspired with or aided and abetted John Doe 1 in the unlawful acts described herein.

IV. FACTUAL BACKGROUND

15.  Plaintiff founded YOLO, which operates in the online gaming and fintech sectors and has relationships with licensed operators, payment providers, regulators, and affiliates around the world.

16.  As a result of his work, Plaintiff's personal name, "Tim Heath," has acquired substantial goodwill and recognition in the i-gaming and fintech communities.  His name is closely associated with YOLO's brands, and investors, partners, and regulators rely on his reputation as a mark of quality and reliability.

17. Upon information and belief, John Doe 1 and certain of the Doe Defendants were formerly business partners or affiliates of YOLO in the Turkish market. In or around 2024–2025, disputes arose regarding commissions and the termination of their business relationship.

18. Internal communications reflect that the former partner demanded an upfront payment of approximately USD $900,000 representing amounts he claimed he would earn under the parties' agreement, and an additional payment of approximately USD $2 million in exchange for transferring affiliate panels and sub-affiliates to YOLO.

19. When YOLO declined to make the demanded payments, the former partner sent messages—captured in WhatsApp and Slack screenshots—stating that he would (a) "go global" and "report on this scandal with 100+ people on all global forums"; (b) publish articles accusing YOLO of failing to pay partners and players; (c) publish information about layoffs and alleged financial struggles; (d) use social-media accounts (Telegram, Twitter/X, etc.) to persuade players to move to competitors or to stop playing; and (e) take his time "going after anything we haven't even thought about now."

20. These statements were intended to pressure Plaintiff Heath and YOLO into paying the demanded sums and to threaten reputational harm if they refused.

21. After those threats, Defendants registered and launched the website Tim-Heath.com using Plaintiff's personal name in the domain. Upon information and belief, Defendants also registered and use whoistimheath.com to host the same or similar content in another language and/or to evade enforcement efforts (together with Tim-Heath.com, the "Websites").

22. The Websites prominently display an article titled "Trouble Inside YOLO Group: Layoffs, Black Market Ties, and a Founder on the Run" (the "Article"). The Article purports to be a "report" on YOLO and contains, among others, the following allegations presented as statements of fact: (a) YOLO is "embroiled in a series of scandals involving sudden layoffs, alleged black market dealings, and an exodus of its controversial founder"; (b) YOLO has engaged in "facilitating or processing payments tied to black market operations," including "unregulated gambling networks and crypto-based laundering schemes"; (c) these "black market ties" are "the deep root of a recent, unexplained kidnapping incident in Estonia"; (d) regulators in Estonia and international watchdogs are allegedly scrutinizing YOLO for these activities; (e) Plaintiff has "relocated to the United Arab Emirates" as part of an attempt "to escape legal consequences"; and (f) YOLO purportedly obtained a UAE "white license" under suspicious circumstances despite "unresolved regulatory issues" and "black market" involvement.

23. The Article is written in a journalistic style and purports to rely on unnamed "internal sources" and "whistleblowers," but it provides no sourcing, documents, or verifiable evidence for its allegations.

24. In reality, the statements quoted above are false and are part of the threatened scheme to harm and extort the Plaintiffs. YOLO has not been involved in "black market dealings," "crypto-based laundering schemes," or any kidnapping, and Plaintiff has not "fled" to any jurisdiction to avoid legal consequences. Plaintiff's relocation and travel, including any residence in the UAE, are not related to any alleged criminal investigations. The Article's implication to the contrary is false and defamatory.

25. Defendants have amplified the Article by posting it, or substantially similar text, on social-media platforms such as Twitter/X under accounts associated with "Porsuk" and others; encouraging players, affiliates, and business partners to read and share the Article; and direct-messaging third parties with links to the Article and exhorting them to "make everyone globally—especially potential or active business partners—aware of these situations."

26. The Websites appear in search-engine results for Plaintiff's name and have, upon information and belief, been viewed by existing and potential business partners, investors, employees, and regulators. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer severe and irreparable harm, including damage to his personal and professional reputation, loss of business opportunities, emotional distress, and the expenditure of significant time and resources to respond to inquiries and mitigate the damage.

V. CLAIMS FOR RELIEF
COUNT I – Declaratory Judgment (28 U.S.C. § 2201)

27. Plaintiff incorporates by reference the preceding paragraphs.

28. An actual controversy exists between Plaintiff and Defendants regarding the right to use and control the Defendant Domain Names.

29. Defendants' registration and use of the Defendant Domain Names violates the ACPA and other laws in that the Defendant Domain Names include the Plaintiff's name and were registered in bad faith to profit and Plaintiff is entitled to transfer of those domain names.

7

30. Plaintiff seeks a declaration that he is the only party with any lawful right or legitimate interest in the Defendant Domain Names which consist of or incorporate his personal name, including Tim-Heath.com and whoistimheath.com, and that Defendants have no such rights.

COUNT II – Violation of the Anticybersquatting Consumer Protection Act
15 U.S.C. § 1125(d)

31. Plaintiff incorporates by reference the preceding paragraphs.

32. Plaintiff's personal name, "Tim Heath," functions as a distinctive mark identifying him in commerce and in connection with his services in the online gaming and fintech industries.

33. Plaintiff's name has acquired secondary meaning among investors, partners, and consumers as identifying Plaintiff and his professional services.

34. Defendants registered, trafficked in, and/or used the domain name Tim-Heath.com, which is identical or confusingly similar to Plaintiff's distinctive mark, with a bad-faith intent to profit from that mark.

35. Factors evidencing Defendants' bad-faith intent include: (a) their lack of any trademark or other intellectual-property rights in the name "Tim Heath"; (b) their intent to divert consumers and business partners from Plaintiff's businesses to other operators by creating confusion as to source, sponsorship, or affiliation; (c) their use of the domain to disparage Plaintiff and exert leverage in a commercial dispute; (d) their use of the Defendant Domain Names to attempt to extort funds from the Plaintiff; and (e) their use of false or incomplete WHOIS and contact information.

36. Defendants' conduct constitutes cybersquatting in violation of 15 U.S.C. § 1125(d)(1).

37. Plaintiff is entitled to injunctive relief, including an order transferring Tim-Heath.com and whoistimheath.com to Plaintiff, and to statutory or actual damages as permitted by law.

COUNT III – Defamation and Defamation Per Se

38. Plaintiff incorporates by reference the preceding paragraphs.

39. Defendants published and republished to third parties the false statements of fact described above, including allegations of "black market dealings," money-laundering schemes, kidnapping connections, regulatory investigations, and Plaintiff's supposed flight from justice.

40. These statements are not opinions, hyperbole, or fair comment; they are specific factual assertions capable of being proven true or false.

41. Defendants made these statements without privilege and communicated them to countless third parties worldwide.

42. The statements are false, and Defendants either knew they were false, recklessly disregarded their falsity, or acted with negligence regarding their truth or falsity.

43. Defendants' statements impute to Plaintiff the commission of serious crimes and conduct incompatible with the proper exercise of his trade and profession, and therefore constitute defamation per se.

44. The Defendant published actionable false statements, which they knew were false, concerning the Plaintiff that harmed, and continue to harm, his reputation in the relevant community and to deter third persons from doing business with him with the intent to cause harm to the Plaintiff's reputation and business.

45. As a direct and proximate result, Plaintiff has suffered presumed and actual damages, including harm to reputation, emotional distress, and economic losses, in amounts to be proven at trial.

COUNT IV – Business Disparagement / Injurious Falsehood

46. Plaintiff incorporates by reference the preceding paragraphs.

47. Defendants published false statements disparaging YOLO's business operations, integrity, and regulatory compliance with the intent to cause, and in fact causing, pecuniary loss to Plaintiff and YOLO.

48. Defendants acted with malice, in that they knew their statements were false or recklessly disregarded their truth and published them for the improper purpose of coercing payments and damaging YOLO's reputation.

49. Plaintiff is entitled to recover special damages, including lost profits and business opportunities, in an amount to be proven at trial.

COUNT V – Tortious Interference with Contractual Relations and Business Expectancy

50. Plaintiff incorporates by reference the preceding paragraphs.

51. Plaintiff and YOLO have existing contracts and valid business expectancies with operators, payment providers, affiliates, employees, and other partners.

52. Defendants knew of those relationships and expectancies and intended to interfere with them by publishing and disseminating false accusations of criminal conduct, regulatory violations, and financial instability.

53. Defendants' wrongful conduct has caused and will continue to cause third parties to terminate or not enter into relationships with Plaintiff and YOLO.

54. As a direct and proximate result, Plaintiff has suffered damages, including lost business and reputational harm.

COUNT VI – Unfair Competition and False Designation of Origin
Lanham Act § 43(a), 15 U.S.C. § 1125(a)

55. Plaintiff incorporates by reference the preceding paragraphs.

56. Defendants' use of Plaintiff's personal name in the Defendant Domain Names, together with the Websites' design and content, is likely to cause confusion as to whether the Websites are operated, authorized, or endorsed by Plaintiff.

57. Defendants' false and misleading statements about Plaintiff and YOLO in commercial advertising or promotion misrepresent the nature, characteristics, and qualities of Plaintiff's and YOLO's services.

58. Defendants' acts constitute false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

59. Plaintiff is entitled to injunctive relief, damages, and an accounting of Defendants' profits under 15 U.S.C. § 1117.

COUNT VII – Unjust Enrichment

60. Plaintiff incorporates by reference the preceding paragraphs.

61. Through their wrongful acts, Defendants have obtained benefits, including traffic, advertising revenue, and leverage in their dispute with YOLO, at Plaintiff's expense.

62. Defendants appreciate and retain these benefits under circumstances that make it inequitable for them to do so.

63. Plaintiff is entitled to restitution and disgorgement of Defendants' unjust gains.

VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants and grant the following relief:

A. A declaration that Plaintiff is the sole party with lawful rights in domain names consisting of or incorporating his personal name, including Tim-Heath.com and whoistimheath.com, and that Defendants have no such rights;

B. An order transferring the registration and control of Tim-Heath.com and whoistimheath.com to Plaintiff and directing the relevant registrars and registry operator to effect such transfer;

C. Preliminary and permanent injunctions enjoining Defendants, and all persons acting in concert with them, from (1) publishing or republishing, at the Defendant Domain Names or any domain name confusingly similar to them, the Article titled "Trouble Inside YOLO Group: Layoffs, Black Market Ties, and a Founder on the Run," or any substantially identical republication of that Article; (2) using Plaintiff's name in domain names for the purpose of publishing or promoting that Article or any substantially identical republication; and (3) otherwise using the Defendant Domain Names to falsely represent that Plaintiff or YOLO engage in criminal or "black market" activity;

D. An order disabling the Websites

E. An order requiring Defendants to remove or request removal of the defamatory content from search-engine indexes and social-media posts within their control and to take all available actions to accomplish the removal;

F. An award of Plaintiff's actual, special, statutory, and exemplary damages, including damages under 15 U.S.C. § 1117 and state law, in amounts to be proven at trial;

G. Restitution and disgorgement of Defendants' profits and unjust enrichment;

H. Plaintiff's costs and reasonable attorneys' fees as permitted by law; and

I. Such other and further relief as the Court deems just and proper.

Date: November 14, 2025

                                                          Respectfully submitted

                                                          Tim Heath and
                                                          YOLO Group, Ltd.
                                                          By Counsel

*/ Jonathan Westreich, Esq.*
_____

Jonathan Westreich, Esq.
VSB No. 37393
Greenberg & Lieberman, LLC, (of counsel)
604 Cameron Street
Alexandria, Virginia 22314
703-299-9050
Fax: 765-233-9004
jonathan@westreichlaw.com

Stevan Lieberman, Esq.
Not Admitted in Virginia
Greenberg & Lieberman, LLC
1775 Eye Street, Suite 1150
Washington, D.C. 20006
202-625-7000
Fax: 202-625-7001
stevan@aplegal.com

                Counsel for Plaintiff Tim Heath and Yolo Group, LTD

VERIFICATION

I, Tim Heath, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I am the Plaintiff in the foregoing action; that I have read the foregoing Verified Complaint; and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

Dated: __14. 11__, 2025

_____
Tim Heath